The People of the State of New York ex rel. D. W. Griffith, Inc., Respondent, v. Michael F. Loughman et al., Constituting the State Tax Commission, Appellants.

370

(Argued October 3, 1928; decided November 20, 1928.)

*Albert Ottinger*, Attorney-General (*Henry S. Manley* and *Wendell P. Brown* of counsel), for appellants. The rate fixed by the amendment was applicable. (*Home Ins. Co.* v. *City Council*, 93 U. S. 116; *Memphis Gas Co. ⁻ ᵤ Shelby County*, 109 U. S. 398; *Roberts & Schaeffer Co.* v. *Emmerson*, 271 U. S. 50; *Palmer* v. *Hickory Grove Cemetery*, 84 App. Div. 600.) The provision of section 181 of the Tax Law, imposing a license fee upon foreign corporations issuing stock without par value, at the rate of six cents per share on such portion of the issued no-par value stock as is employed in this State, is a constitutional exercise of the taxing power of the State. (*People ex rel. Elliott-Fisher Co.* v. *Sohmer*, 148 App. Div. 514; 206 N. Y. 634; *People* v. *Fire Ins. Co.*, 92 N. Y. 311; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *Security Mutual Life Ins. Co.* v. *Prewitt*, 202 U. S. 246; *Ashley* v. *Ryan*, 153 U. S. 436; *Hooper* v. *California*, 155 U. S. 648; *Hanover Fire Ins. Co.* v. *Carr*, 272 U. S. 494;

District of Columbia v. Brooks, 214 U. S. 138; Stebbins
v. Riley, 268 U. S. 137; People ex rel. Hatch v. Reardon,
184 N. Y. 431; 204 U. S. 152; Roberts & Schaeffer Co.
v. Emmerson, 271 U. S. 50.)

E. Crosby Kindleberger, M. E. Harby, Edward G.
Zimmer and Albert H. T. Banzhaf for respondent.   The
relator having ten months previously procured authority
to do business in the State of New York, the amendment
of section 181 of the Tax Law, passed May 12, 1921, and
not stated to be retroactive, did not apply.   (Jacobus v.
Colgate, 217 N. Y. 235; Campbell v. New York Evening
Post, 245 N. Y. 320; People v. Cohen, 245 N. Y. 419;
Blodgett v. Holden, 275 U. S. 142; Schwab v. Doyle, 258
U. S. 529; Lewellyn v. Frick, 268 U. S. 238; Standard
Home Co. v. Davis, 217 Fed. Rep. 904; Power v. Calvert
Mtge. Co., 112 Miss. 319; Untermyer v. Anderson, 48
Sup. Ct. 353; Matter of Maltbie v. Lobsitz Mills Co., 223
N. Y. 227; City of New York v. McLean, 170 N. Y. 374;
State of Colorado v. Harbeck, 232 N. Y. 71.)   Section
181 of the Tax Law, amended on May 12, 1921, fixing
the license fee upon corporations having no par stock
at an arbitrary sum of six cents per share, irrespective
of the value of its property employed in the State, is
unconstitutional.   (State of Colorado v. Harbeck, 232 N. Y.
71; People ex rel. Farrington v. Mensching, 187 N. Y. 8;
Air-Way Electric Appliance Corp. v. Day, 266 U. S.
71; Quaker City Cab Co. v. Commonwealth of Pennsylvania,
16 J. & S. 553; Wickersham on Stock without Par Value,
136, 138; Power Mfg. Co. v. Saunders, 274 U. S. 490;
Louisville Gas & Electric Co. v. Coleman, 48 Sup. Ct.
Rep. 423; Matter of Thermiodyne Radio Corp., 26 Fed. Rep.
[2d] 713; Stebbins v. Riley, 268 U. S. 137; Hanover Fire
Ins. Co. v. Carr, 272 U. S. 494; Southern R. R. v. Greene,
216 U. S. 400; American Smelting & Refining Co. v. Colo-
rado, 204 U. S. 103; Looney v. Crane Co., 245 U. S.
178.)

LEHMAN, J.   The relator, D. W. Griffith, Inc., is a corporation organized under the laws of the State of Maryland.   In July, 1920, it applied to the Secretary of State of New York for permission to do business in this State. Its authorized capital stock consisted of 500,000 shares of no par value.

At the time the relator began to do business in this State, the Tax Law (Cons. Laws, ch. 60, section 181) provided: " Every foreign corporation   *   *   *   doing business in this state, shall pay to the state treasurer, for the use of the state, a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business   *   *   *   in this state, to be computed upon the basis of the capital stock employed by it within this state, during the first year of carrying on its business in this state; which first payment shall not be less than ten dollars; and if in any year thereafter any such corporation shall employ more than eight thousand dollars of its capital stock within this state on which a license fee has not been paid then a license fee at the rate of  one-eighth of one per centum shall be due and payable upon any such increase.   The measure of the amount of capital stock employed in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business.   *   *   * No action shall be maintained or recovery had in any of the courts in this state by such foreign corporation after thirteen months from the time of beginning such business within the state, without obtaining a receipt for the payment of the license fee upon the capital stock   *   *   *."

In *People ex rel. Elliott-Fisher Co.* v. *Sohmer* (148 App. Div. 514; affd., 206 N. Y. 634) it was held that " the clear intention of the Legislature was that this tax should be based upon the par value of the capital stock which is employed in business in the State." At the time the relator began to do business within the

State, the statute did not expressly provide any measure for capital stock which had no par value. In *People ex rel. Terminal & Town Taxi Corp.* v. *Walsh* (202 App. Div. 651) the Appellate Division held that in such circumstances the tax must be based upon the actual capital of relator within this State.

The omission in the statute was supplied by an amendment to section 181 of the Tax Law which took effect on May 12, 1921, or about ten months after the relator began to do busines in this State. " The issued capital stock of any corporation issuing shares without designated monetary value shall pay for the use of the state a license fee of six cents on each such share employed in this state, as hereinbefore provided." At the close of the first year of carrying on business within this State, the tax or license fee payable by the corporation has been fixed at six cents on each share of its capital stock employed in this State. The tax so fixed is much greater than it would have been if based upon the actual capital of the relator within this State in accordance with the practice which prevailed before the amendment of the statute; and the relator attacks the assessment on the ground that the amendment is unconstitutional, and that in any event it should not be construed as applying to corporations which had begun to do business in this State under certificate of permission issued by the Secretary of State before the amendment took effect.

There can be no doubt that the method of taxation embodied in the amended statute must result in some inequalities. Corporations with stock having no par value are taxed on a basis entirely different from the tax assessed against corporations which have issued stock with a par value. The number of shares of capital stock having no par value bears no relation of any kind to the actual capital or business of the corporation. It can form, it is said, no legitimate basis for the imposition of a license tax upon a foreign corporation. Such con-

siderations are clearly not without weight, and have led not only the court below but the Circuit Court of Appeals (Third Circuit) to hold the amendment unconstitutional. relying on the authority of *Air-Way, etc., Corporation* v. *Day* (266 U. S. 71). (*Matter of Thermiodyne Radio Corp.*, 26 Fed. Rep. [2d] 713; affd., October 31, 1928, " on opinion of Judge MORRIS below," not yet reported. See, also, *People ex rel. Terminal & Town Taxi Corporation* v. *Walsh, supra.*) We have reached the opposite conclusion in spite of the inequalities that may be produced by the tax.

The relator is a foreign corporation. The Legislature might have excluded it from the State. It chose to admit it upon condition that it pay a license fee or tax, just as a domestic corporation must pay a similar organization tax before it receives corporate powers from the State. The power of the State to impose upon a foreign corporation a license fee or tax as a condition precedent to its entry into the State is, from its nature, less subject to constitutional limitations than the power to impose a franchise tax as payment or compensation for the privilege of continuing to do business here. Different tests must be applied to determine the validity of attempted exercise of such powers. (*Hanover Fire Insurance Company* v. *Harding*, 272 U. S. 494.) At least, in the former case, there need not be equality between domestic and foreign corporations.

Here, though the tax is called a " license " tax in the statute, it cannot be measured until one year after the corporation has received a certificate of authority to do business in the State, and payment is necessarily postponed until after that time. In strict sense, such payment is not a condition precedent to the entry of the corporation into the State. For that reason, in *Matter of Thermiodyne Co. (supra)*, the court held that the validity of the tax must be tested as if it were a " franchise " rather than a license tax. The test of the validity of the tax must be determined " by its substance — its

essential and practical operation — rather than its form and local characterization." (*International Paper Company* v. *Massachusetts*, 246 U. S. 135.) The State has admitted the relator subject to the condition that the corporation pay a license fee, just as a domestic corporation must pay an organization tax before it has any power to act. The measure of the tax adopted by the Legislature required postponement of the tax bill a year after the corporation began to do business. Only in that sense is such payment a condition subsequent. The obligation to pay arose when the corporation began to do business in the State, and the effect of failure to meet that obligation results not merely in the revocation of authority previously granted by the State to do business here, but acts as a bar to enforcement, within the State, of contracts made in the course of such business. Essentially the tax constitutes the payment exacted for the privilege of entering into the State, even though in some particulars it is analogous to a franchise tax.

We have analyzed the essentials of the tax and its practical operation to indicate the question presented in this case. Authority is not lacking that the Legislature might have adopted the same measure as a basis even for a franchise tax. We are not called upon to define the extent of the legislative power beyond the limits of its exercise in this case. We do not attempt to determine whether the Legislature might have gone further.

In *Air-Way, etc., Corp.* v. *Day* (*supra*) the Supreme Court of the United States held that " the mere number of authorized non-par value shares is not a reasonable basis for the classification of foreign corporations for the purpose of determining the amount of such annual fees " to be paid to a State for the privilege of doing business therein. The court pointed out several objections to the tax. " The inevitable effect of the act is to tax and directly burden interstate commerce of foreign corporations permitted to do business in Ohio, and engaged in interstate

commerce, wherever the number of shares authorized, subject to the charge of five cents each, exceeds the number of outstanding shares attributable to or represented by the corporation's property and business in that State. * * * Plainly the fee, to the extent that it is based on a number of shares in excess of those outstanding, has no relation to what was paid in for the stock or to its value or to the amount of plaintiff's capital, its property or its business, intrastate in Ohio or interstate. The act in its practical operation does not require like fees for equal privileges held by foreign corporations in Ohio under the same circumstances."

It is clear that neither of these objections can have any application in this case. The basis of the tax here is not the mere number of *authorized* shares of stock, but the number of *issued* shares of stock *used in this State*. There is, therefore, no direct burden on interstate commerce, even if such an objection could be raised to a tax exacted for the privilege accorded to a foreign corporation to enter the State. (*Hanover Insurance Company* v. *Harding, supra.*) Though the court does advert in its opinion to the circumstance that the number of non-par value shares of a corporation constitute no representation as to, and has no relation to the amount of its capital, yet the fee or tax in that case was held unconstitutional, not because of that circumstance, but because it was based " on a number of shares in excess of those outstanding." The question of whether a State might impose a privilege tax on a corporation based, as here, upon the number of its issued shares of non-par stock or the proportion used in the State, was still left open.

That question was definitely decided in *Roberts & Schaefer Co.* v. *Emmerson* (271 U. S. 50). There the State of Illinois imposed a franchise tax, on domestic corporations having no par value stock, upon the basis of the number of authorized shares of its capital stock which the Legislature declared " shall be considered to be

of the par value of $100 per share." The court pointed out that the *Air-Way* case merely decided that such a tax imposed by the State of Ohio on a foreign corporation was invalid because the corporation's " authority to issue its capital stock was a privilege conferred by another State and bore no relation to any franchise granted to it by the State of Ohio or to its business and property within that State." Those objections do not apply to a tax imposed by the State from which the corporation derives its authority to issue stock. It may impose a franchise tax based upon the authorized corporate stock, whether issued or not.

Even so, the objection still remained that a " flat rate per share on no-par value stock, regardless of its value," may produce such inequalities as to result in " an unreasonable and discriminatory classification in which no-par value stock is placed in one class and taxed at an arbitrary valuation * * * while par value stock is placed in another class and taxed at the value at which it is authorized to be issued." The court held that in spite of such inequalities the classification was reasonable. It pointed out that " because of the essential differences between the two kinds of stock, it is difficult to conceive of any other method of assessing the tax which would save the character of no-par value stock and not result in similar inequalities " unless the State should choose to abandon entirely its system of measuring the franchise tax payable by the par value of authorized corporate stock.

It would seem that for the same reasons a similar classification is reasonable where a tax on foreign corporations is measured by the number of issued shares of their capital stock or the proportion used in the State, and in the case of *Margay Oil Corporation* v. *Applegate* (273 U. S. 666) the court so held without opinion " on authority of *Roberts and Schaefer Co.* v. *Emmerson*, 271 U. S. 50." The facts in that case are stated in the opinion

of the State court in the same case (269 S. W. Rep. 66). We find no distinction in principle between the classification adopted by the State of Arkansas and there sustained, and the classification which is challenged in the case now under consideration. For these reasons we hold that the statute is not unconstitutional, at least as applied to foreign corporations who after it became effective have entered the State and begun to do business here.

The question of whether the Legislature intended to make the amendment apply to corporations which had already begun to do business under certificate of authority issued by the Secretary of State, and, perhaps even whether the Legislature could give effect to such intention, if it had it, is not free from doubt. We hold that under a fair construction of the amendment, the Legislature intended the amendment to apply only to corporations which thereafter began to do business or which became obligated to pay an additional tax because in any year after the amendment became effective it employed additional taxable capital stock in the State.

We have pointed out that the payment of the tax is imposed for the privilege of entering into the State. Though it is lawful to begin to do business in the State without its payment, the Legislature has declared in effect that non-payment of the tax thereafter shall result in the withdrawal of the sanction previously given to do business here, even in so far as concerns business already done. The foreign corporation, having begun to do business, may not escape its obligation to pay the tax by subsequent withdrawal from the State. Though we assume that the Legislature has power to change the tax at any time before the tax is assessed, yet a change in the tax might result in placing the foreign corporation, which has acted upon the sanction conditionally given, in so unfair a position that the intention to make a change apply to such corporations should not be imputed to the

Legislature. We may disregard inequality in the incidence of a tax between corporations having stock with a par value and those having stock without par value, and even among corporations having stock without par value where that inequality is the result of a reasonable classification. If we construe the statute as intended to apply to corporations which had already obtained a conditional sanction to do business in the State, then this relator is subjected to inequality by reason of an unexpected change in conditions under which such sanction was offered and accepted. The measure of the obligation is changed after the obligation has been assumed. The circumstance that liability to pay an increased tax is based upon a transaction already completed might, indeed, raise doubt as to the power of the State to impose such liability. The statute should be construed in such manner as to free it from such doubt. The State should not be subjected to a justified charge of unfairness. " The general principle ' that the laws are not to be considered as applying to cases which arose before their passage ' is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways." (*Lewellyn* v. *Frick*, 268 U. S. 238. See, also, *Blodgett* v. *Holden*, 275 U. S. 142; *Untermyer* v. *Anderson*, 48 Supreme Court Reporter, 353.)

It is said that if we exclude from the scope of the amendment the obligation of the relator to pay a tax " to be computed upon the basis of the capital stock employed by it * * * during the first year of carrying on its business in this State " we must likewise exclude from the scope of the amendment the additional tax which a foreign corporation already doing business in the State must pay " if in any year thereafter any such corporation shall employ more than eight thousand dollars of its capital stock within this State on which a license fee has not been paid." That, we think, does not follow.

The obligation to pay the additional license fee or tax will arise only when and if the foreign corporation chooses to employ additional capital in the State in any year after the amendment became effective. It is a future obligation dependent upon future acts within the power of the corporation to control, and as to that tax all foreign corporations which have received authority to do business here, and which have stock without par value, are treated in the same way. It is, too, essentially a different kind of tax from the tax payable at the end of the first year, in which the corporation has done business here. Payment of the additional tax is, perhaps, like payment of a franchise tax, a condition subsequent to continuing to do business here; but non-payment does not render contracts previously made in the course of business unenforceable in our courts. None of the arguments which lead to the conclusion that the Legislature did not intend to change, even if it could, the measure of a tax where the obligation to pay has already arisen though the time for its measurement and payment has not arrived, apply with force to an additional tax or fee which becomes payable, because in any year after the amendment became effective, the corporation chooses to employ within the State additional capital.

For these reasons the order should be affirmed, with costs.

CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur; CARDOZO, Ch. J., and POUND, J., concur, expressing no opinion, however, as to the application of the statute in the event additional capital is employed in future years.

Order affirmed.