THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK RAPID TRANSIT CORPORATION, Relator, *v.* MICHAEL F. LOUGHMAN and Others, as and Constituting the State Tax Commission, Respondents.*

Third Department, March 20, 1929.

*George D. Yeomans* [*D. A. Marsh* of counsel], for the relator.

*Hamilton Ward, Attorney-General* [*Henry S. Manley* and *Wendell P. Brown* of counsel], for the State Tax Commission.

HINMAN, J.  Before and during the year prior to July 1, 1927, elevated railroads and electric surface railroads were required to file a report with the State Tax Commission by August first, showing gross earnings and dividends for the fiscal year ending the preceding June thirtieth, and to pay, not later than August fifteenth, a franchise tax of one per cent upon gross earnings, plus a percentage tax on dividends declared in excess of four per centum. (Tax Law, §§ 185, 192, 197.)  Subways paid one-half of one per cent upon gross earnings only, as the law stood during the year prior to July 1, 1927.  (Tax Law, § 184.)  Chapter 399 of the Laws of 1927 (which became a law March 29, 1927, but provided that it should take effect July 1, 1927) amended section 185 of the Tax Law so as to provide that the additional franchise tax on elevated, subway or surface railroads should be uniformly one-half of one per cent upon gross earnings and struck out of section 183 of the Tax Law the exemption of such corporations from the main franchise tax imposed under section 182 of the Tax Law.

The question raised on this appeal is whether the relator, which operated elevated, subway and surface railroads from July 1, 1926, to June 30, 1927, and duly reported its gross earnings for that period, should pay its franchise tax under said section 185 at the old rate fixed by said section throughout that period, or at the lower rate which became effective July 1, 1927, by the 1927 amendment of said section.

All we have as to the legislative intention is that the amendment, fixing the lower rate, was made effective July 1, 1927. Prior to that date nothing had been done or could have been done in the process of imposing the tax. No report could be made by the corporation until after June thirtieth. It had until August first to file its report of gross earnings for the year ending June thirtieth. (Tax Law, § 192.) The State Tax Commission then had to examine the report and, if it desired, might examine further into the affairs of the corporation bearing on the subject-matter of the report. After thus obtaining data satisfactory to it, the Commission was then required to " order and state an account for the tax due the State." (Tax Law, § 195.) There is no provision of the Tax Law which declares that this additional franchise tax is deemed to be imposed at any earlier date. In the absence of a legislative command to the contrary, it seems clear to us that the Commission was controlled by the statute in force at the time fixed for the imposition of the tax. (*People ex rel. American Bible Society* v. *Commissioners*, 142 N. Y. 348.)

The statute in question does not state for what year the tax is imposed. The only statement is that there must be an annual tax paid, to be measured by the gross earnings of the previous year. The business done during the preceding year may have been referred to simply to measure the tax and for no other purpose. In construing the original corporate franchise tax acts of 1880 and 1881 (Laws of 1880, chap. 542, as amd. by Laws of 1881, chap. 361), the Court of Appeals said: " These acts are prospective in their operation, and the tax thereby imposed is payable annually, not for the past, but for the future enjoyment of the franchise. The framers of the act had to solve the problem of ascertaining the value of such enjoyment, and for that purpose alone was reference made to dividends." (*People* v. *Albany Insurance Co.*, 92 N. Y. 458, 460.) For almost fifty years since this tax was initiated it has been annually levied. Under the above judicial interpretation it started as a tax payable in advance but measured by previous earnings. Amendments to section 185 do not reveal any legislative command to reverse the original theory and to make it a tax for past enjoyment. The learned Attorney-General contends that it is a tax for past enjoyment but fails to reveal when the transition took place.

Presumably elevated railroad corporations have been paying this tax in advance since 1880. It is claimed to be an historical fact that when the Tax Law was generally revised in 1896 (Laws of 1896, chap. 908, in effect June 15, 1896) the tax on elevated railroads under section 185 was increased and that the State applied the increased rate for the tax imposed that year. This is not denied by the State. Whatever may have been the fact in 1896, the original legislation, followed by its early interpretation, would seem to indicate that the relator has been paying its tax under section 185 in advance and that the payment made by it in 1926 paid for the privilege of doing business for the year ending June 30, 1927. The legislative body will be presumed to be acquainted with such history of this particular tax, which might easily account for the fact that the Legislature made the amendment of 1927 effective July 1, 1927.

The learned Attorney-General relies on certain authorities subsequent to the decision in *People* v. *Albany Insurance Co. (supra)*. (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51; *People* v. *Metropolitan Surety Co.*, 158 App. Div. 647; *People ex rel. Griffith, Inc.*, v. *Loughman*, 249 N. Y. 369.) These authorities relate to other taxes and are not necessarily binding. In *People ex rel. Mutual Trust Co.* v. *Miller (supra)* the Court of Appeals was settling the meaning and application of a new tax on trust companies and the considerations there involved led the court to hold that the first tax should be apportioned. The court recognized that the question before it was not free from doubt and such doubt was resolved in favor of the taxpayer in accordance with established authorities. In *People* v. *Metropolitan Surety Co. (supra)* this court reviewed the record of the corporation as to payment of the tax there in question (Tax Law, § 187), since it began business, and said: " It is sufficient for the purposes of this case to determine that the defendant has not paid the tax for the privilege enjoyed in the year 1908, as the tax paid each year was for the privilege enjoyed the previous year." In *People ex rel. Griffith, Inc.*, v. *Loughman (supra)* the tax involved was a license tax on foreign corporations under section 181 of the Tax Law " for the privilege of entering into the State." The obligation to pay that tax arose when the foreign corporation began to do business in the State. Essentially it constituted a payment exacted for the privilege of entering into the State. It was analogous to the organization tax payable in advance by a domestic corporation. (Tax Law, § 180.) The measure of the similar tax levied on a foreign corporation required the postponement of its payment until a year after the corporation began to do business. There is nothing decided in that case tending to the conclusion that the franchise tax under section 185 of the Tax Law is for past rather than

future privilege. Such history of the section in question and of the imposition of this particular tax as is available to us upon this record tends to indicate the contrary. For the purposes of this case at least, doubt, if any, should be resolved in favor of this taxpayer.

Irrespective of that question, however, we think the determination was erroneous. Even if the tax under said section 185 were to be held to be a tax for the preceding year, still the Legislature has the power to change the tax at any time before the tax is assessed. (*People ex rel. American Bible Society* v. *Commissioners, supra.*) The tax in question was not imposed by law as of any date within such preceding year but was expressly required to be assessed at a time subsequent to the date when the amendatory act took effect. The tax at the old rate was, therefore, not saved by section 93 of the General Construction Law, as urged by the Attorney-General. The State had no existing right to the tax definitely fixed and the corporation had no existing obligation definitely fixed prior to the time set for the imposition of the tax by the Commission after the filing of relator's report. (Tax Law, § 195.)

The determination of the State Tax Commission should be annulled, with fifty dollars costs and disbursements, and the matter remitted to have the account against the relator in 1927 revised in accordance with section 185 of the Tax Law, as amended by chapter 399 of the Laws of 1927.

VAN KIRK, P. J., WHITMYER, HILL and HASBROUCK, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the State Tax Commission.