STATE *v.* SIOSI OIL CORPORATION.

[No. 26,376.  Filed January 13, 1936.]

*Philip Lutz, Jr.,* Attorney-General, and *Joseph W. Hutchinson,* Assistant Attorney-General, for the State.

*Fesler, Elam, Young & Fauvre* and *Cooper, Royse, Gambill & Crawford,* for appellee.

FANSLER, J.—Appellee, a foreign corporation, was licensed to do business in Indiana in 1927 upon its application, in which it represented that its capital stock consisted of 100 shares of common stock having no par value, that the total amount of its property was $10,000, and that the estimated amount of property of the corporation to be employed in the State of Indiana was $5,000. Upon this application the Secretary of State issued a license to the corporation upon the payment of an admission fee of $25. Thereafter appellee filed an amended annual report for the year ending December 31, 1927, from which it appears that at that time the total assets of the corporation and business done in the year 1927 was $318,858.89; that during that year it had property and assets of $153,091.44, and transacted business amounting to $35,545.57, within the State of Indiana; that as of December 31, 1927, it had outstanding 330 shares of preferred stock of the par value of $100 per share, and 133,000 shares of common stock of no par value. Upon the basis of these figures it appears that during 1927 the amount of its capital stock, represented by the proportion of its property

and assets located in and business done in Indiana, was 59.16 per cent, or 195.22 shares of preferred stock and 78,682.8 shares of common stock.

Upon the filing of this report the Secretary of State accepted the figures, and demanded of appellee the payment of $7,882.72 as fees. This amount the corporation paid under protest to avoid penalties, and brought this action in the superior court of Marion county, sitting as a court of claims, to recover the amount paid.

We need not notice the pleadings. There were special findings showing the facts to be as stated, and they are not disputed, and, if the state was entitled to the fees, the computation was correctly made. The court concluded, as a matter of law, that the amount demanded of appellee by the Secretary of State was as a condition to the right of appellee to continue to do business in the state, and that the fees were not demanded or paid as an admission fee. It was concluded also that the provisions of the Indiana statute, which require a foreign corporation to pay 10 cents per share for each share of no par value common capital stock, represented by the property and business of the corporation within the state, as a condition precedent to the right of such corporation to continue to do business in the state, when the law required domestic corporations carrying on the same business to pay only 1 cent on account of no par value capital stock, deprive foreign corporations of the equal protection of the law, and are therefore unconstitutional under the Federal Constitution. There was judgment for appellee for the amount of the fees collected. We need notice only the errors assigned upon the conclusions of law.

The act, of which sections 4909 *et seq.*, Burns' Ann. St. 1926, are a part, is entitled, "An act to regulate the admission of foreign corporations for profit, to do business in the State of Indiana, repealing all laws and parts

of laws in conflict therewith." Acts 1907, ch. 176, p. 286. Section 4910 provides that, when such a corporation desires admission for the purpose of transacting business in this state, it shall make application to the Secretary of State, signed and sworn to by its president and secretary, "stating what business such corporation proposes to pursue in Indiana under its articles of incorporation; the amount of capital stock of such corporation; whether it is transacting, or it is intended that it shall transact, business in any other state, territory or country; the proportion of its business, based upon its total business for the year immediately preceding, carried on in the State of Indiana, or if a newly organized corporation, then the proportion, as nearly as can be determined by estimate, to be transacted in Indiana; the amount paid in upon its capital stock; what property and assets and an estimate of the value thereof to be employed in the business of said corporation in the State of Indiana. . . ." Section 4911 provides that: "The secretary of state shall have power to prescribe the form of such application, and may, in addition thereto, propound such interrogatory or interrogatories to the applicant respecting the character of business in which said corporation proposes to engage in Indiana, the amount of its capital stock, the proportion of business in this state and the proportion and location of its business in other states, territories or countries, and such interrogatories shall be answered under oath, and the interrogatories and answers thereto shall be filed with said application and with the certified copy of its articles or certificate and shall be and operate as a limitation upon the powers of said corporation to transact businesss in the State of Indiana." Section 4914 provides that: "Any foreign corporation heretofore or hereafter admitted to do business in the State of Indiana shall be required to make reports to the secretary of

state, within thirty days after the first day of January of each year, stating under oath the then name of the corporation; its total capital stock; the proportion of its business in this state; the value of its property and assets in this state and the proportion thereof as compared with its total property and assets; the character of business being transacted in this state; the location of its office; the name of its agent or attorney in fact; and the names of its president, secretary and directors and their residences. Whenever such annual report shall show an increase of five thousand ($5,000) dollars or more in the proportion in this state, the corporation shall pay an additional fee on such increase." Section 4916 provides that: "Before any foreign corporation shall be authorized to do business in this state, it shall be required to pay into the office of the secretary of state, upon the proportion of its stock represented by its property and business in Indiana, a fee of twenty-five ($25) dollars on the first ten thousand ($10,000) dollars or under, and one-tenth of one per cent additional on all amounts in excess of ten thousand ($10,000) dollars; for increase in proportion in this state, a fee of ten ($10) dollars for an amount of ten thousand ($10,000) dollars or less and one-tenth of one per cent additional on all amounts in excess of ten thousand ($10,000) dollars; for filing annual report, a fee of one ($1) dollar. When the capital stock of any foreign corporation is represented by shares of no par value, the fees payable under the provisions of this act shall be ten cents per share for each of such shares as are represented by the business and property located in Indiana. In addition, there shall be collected such certificates and other fees as elsewhere provided by statute. All fees so collected are to be paid by the secretary to the treasurer of state, as other fees are paid."

That a state may exact a fee from a foreign corpora-

tion for the privilege of doing business within the state, based upon the proportion of its business to be transacted within the state, that the fee may be fixed upon the basis of the number of shares of outstanding capital stock which is proportionate to the amount of its total business which is carried on within the state, and that a different rate of taxation may be imposed upon a foreign corporation for the privilege of doing business within the state than is applied to domestic corporations upon the franchise granted them by the state, is well settled. *Kansas City, etc., R. R. Co.* v. *Stiles* (1916), 242 U. S. 111, 37 S. Ct. 58; *Cheney Bros. Co. et al.* v. *Massachusetts* (1918), 246 U. S. 147, 38 S. Ct. 295; *People* v. *Latrobe et al.* (1929), 279 U. S. 421, 49 S. Ct. 377.

The difficulty here arises out of the contention that the additional fee charged, and the additional fees contemplated upon an increase of $5,000 or more in the proportion of business transacted in this state, as shown by any annual report, is a tax upon the privilege of continuing the transaction of business, rather than an admission fee, and that, since domestic corporations are not taxed upon the same basis, it is unconstitutional. But the contention is not supported by the facts, nor upon any reasonable construction of the statute and its obvious purposes.

It is clear that the fees contemplated by statute are not upon an annual or otherwise recurrent basis. A license fee for the privilege of coming into the state to do business is contemplated. The amount of this fee is measured by the amount of capital to be used and business to be transacted in the state, which in turn is measured by the number of shares of capital stock which is proportionate to the amount of capital to be used and business done within the state. The estimate made by the applicant in its application is taken as a

tentative basis for determining the fee, but the statute clearly contemplates that the fee so determined is to be afterward adjusted upon the basis of the first and subsequent annual statements and reports of the corporation. It is as though the state had said: "You may come into this state and do business by the payment of an admission fee proportionate to the amount of your business and capital engaged here. Permission to enter the state is granted now. We will compute the fee when we have definite facts from which to determine the amount of capital engaged and business done within the state." No reason is suggested, nor can we see a reason, why the state cannot make such an arrangement. See *People ex rel. Griffith v. Loughman et al.* (1928), 249 N. Y. 369, 164 N. E. 253.

The representations of the corporation made in its application for admission, and its answers to interrogatories respecting the amount of its capital stock and the proportion of its business which it intends to carry on within the state, are expressly made to "operate as a limitation upon the powers of said corporation to transact business in the State of Indiana." Capital stock outstanding has some relationship to the amount of capital employed, and, though the relationship between the two is variable, and a tax based upon capital stock outstanding will not produce absolute equality between corporations, still, the legislature has the right, if it chooses, to select this method of determining the tax. The privilege of doing business within the state upon the basis of a large capitalization of small unit value must have some advantage, or, if it has not, the corporation may forego the privilege of a large number of shares and thus avoid the payment of large fees. *People v. Latrobe et al., supra.*

It will be observed that the certificate admitting appellant to transact business in the state was made upon

its own representations, from which it appeared that it proposed and intended to transact 50 per cent of its business within this state; that its capital stock outstanding was 100 shares of no par value; and that its estimated business within the state would be approximately $5,000; and its right to transact business in the state was limited to the terms of these representations. By its annual report thereafter made it appears that, immediately after its admission, by a series of issues, it increased its capital stock outstanding to 330 shares of preferred stock with a total value of $33,000, and 133,000 shares of no par value common stock, and that, instead of coming into this state and transacting 50 per cent of its business, amounting to $5,000, it transacted 59.16 per cent, amounting to $188,637.01. This was a larger proportion of its business than it represented itself as proposing to engage in, and more than 35 times as much capital as it represented itself as proposing to use in Indiana. The amount of fees which the statute contemplates shall be charged to a foreign corporation for admission to do business within the state is, and has a right to be, proportionate to the amount of its capital and the proportion of its business within this state as measured by that proportion of its capital stock which corresponds to the proportion of its capital and business used here. If a foreign corporation may issue a nominal amount of capital stock and represent that a small amount of its business will be transacted within the state, and thus procure admission for a nominal fee, and then immediately issue a large amount of stock and engage in business involving many times the capital represented in its application, without being subject to the payment of an admission fee, based upon its true situation, there is an invitation for the practice of fraud and deception, and a discrimination against corporations which frankly

and honestly disclose their purpose in their original application, or which at least more accurately estimate their activities within the state. It may be that, at the time of seeking admission, appellee believed that its business would be small and conducted with a small capitalization, and that its amazingly rapid growth was beyond its expectations. But this is no reason why it should have an advantage over another corporation which correctly anticipated mushroom growth and large business transactions. When a foreign corporation is admitted to transact business in this state, the admission is limited to a fixed or estimated amount of business, and the fee for admission is made proportionate to the amount of business. Hence, by the provision of the statute, a small corporation may be admitted upon a small fee to transact a small amount of business. Later the opportunities of the corporation may make it advisable or desirable to transact a larger amount of business, or a larger proportion of its business, within the state. In such an event, the provisions of the statute permit its admission to conduct its larger business. In no case is it contemplated that the corporation shall pay any additional fee for conducting the same amount of business within the state, or as a condition to continuing to transact the same amount or proportion of its business.

The fact that the shares of common stock were issued as a bonus with preferred stock, or as dividends to prior holders of common stock, cannot alter the situation. It is quite obvious that the estimate of capital to be invested and business to be done within the state, as shown by the application, was out of all proportion to the capital which was invested and the business which was done within the state in the first year, and that the capital stock outstanding at the end of the year was

more nearly proportionate to the holdings and business activities of the corporation than the 100 shares outstanding at the time of its application. Whether or not further stock issues were purposely withheld until after admission is immaterial. The corporation was not required to issue the additional stock. If it saw advantage in doing so, it cannot complain.

Since the facts are not in dispute, the judgment is reversed, with instructions to the court to restate its conclusions of law in conformity with this opinion, and to enter judgment for appellant.