PEOPLE OF THE STATE OF NEW YORK *v.* GAMBLE LATROBE, JR., ET AL., TRUSTEES IN BANKRUPTCY OF THE THERMIODYNE RADIO CORPORATION.

No. 601. Argued April 10, 1929.—Decided May 13, 1929.

Mr. Wendell P. Brown, Third Assistant Attorney General, with whom Messrs. Hamilton Ward, Attorney General of New York, and Robert P. Beyer, Deputy Assistant Attorney General, were on the brief, for appellants.

Mr. Ralph Montgomery Arkush, with whom Mr. James I. Boyce was on the brief, for appellees.

Mr. Justice Stone delivered the opinion of the Court.

This is an appeal under § 240 of the Judicial Code from a judgment of the Court of Appeals for the Third Circuit affirming, on the opinion of the court below, 26 F. (2d) 713, an order of the District Court for Delaware expunging the claim in bankruptcy of appellant, the State of New York, for unpaid taxes assessed by it against the bankrupt corporation.

Section 181, Article 9, of the Tax Law of New York, c. 62, Laws of 1909, as amended, imposes on every foreign corporation doing business in that state a tax computed upon the basis of the capital stock employed by it within the state during the first year it does business there; the amount of its stock so employed being that proportion of its total issued capital stock which its gross assets employed within the state bear to its gross assets wherever employed. In the case of stock having a par value, the tax is fixed at ⅛ of 1% of the par value of its stock so

employed; for stock of no par value the fee is 6 cents per share. The tax, denominated a "license fee," is paid but once, purports to be imposed on the corporation "for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state," and the obligation to pay it is made a prerequisite to obtaining a certificate of authority from the state and to the continuance of business there. *People ex rel. Griffith* v. *Loughman*, 249. N. Y. 369. But the foreign corporation is permitted to transact business and make valid contracts within the state prior to payment of the tax, which of necessity cannot be computed or paid until after the first year has elapsed. The tax is evidently the complement of the organization fee, computed in like fashion on the authorized capital stock of domestic corporations by Chapter 143 of the Laws of 1886. See *People ex rel Elliott-Fischer Co.* v. *Sohmer*, 148 App. Div. 514, aff'd 206 N. Y. 634.

The bankrupt is a Delaware corporation whose authorized capital stock consists of 250,000 shares without par value, all of which has been issued at an average price of $2.32 per share. It commenced doing business in New York in November, 1924, and its total assets were used in its business in that state during the following year. The value of its tangible assets is alleged to have been but $280,000, or about $1.12 per share, and its intangible property to have been of no value. A tax of $15,000, computed at 6 cents per share, was assessed against it, and is the basis of the present claim.

The rejection of the claim by the referee was upheld by the district court on the sole ground that the tax on the bankrupt's non-par stock at the fixed rate of 6 cents per share, without regard to its true value or the amount paid into the corporation upon its issue, infringed the equal protection clause of the Fourteenth Amendment. The

court thought that, as the tax could not be regarded as a true admission fee imposed as a condition of entrance into the state and the corporation was thus in a position to invoke the equal protection clause, see *Hanover Ins. Co.* v. *Harding,* 272 U. S. 494, 510, the invalidity of the taxing statute was established by the decision of this Court in *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71, 83, since foreign corporations having the same amount of business and property both within and without the state, but with a different number of issued non-par shares, might be required to pay a tax differing from each other and from other foreign corporations with par value stock having like property within and without the state. The Court of Appeals of New York has since reached the opposite conclusion both as to the nature of the tax and its constitutionality. *People ex rel. Griffith* v. *Loughman, supra.*

For present purposes we need not determine whether the tax may be sustained because imposed as a condition of entrance into the state, for, assuming that the bankrupt corporation was within the state and thus entitled to equal protection, *Hanover Ins. Co.* v. *Harding, supra; Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417, we do not deem the decision in the *Air-Way* case controlling, nor the tax so unreasonable or discriminatory as to deprive the bankrupt of any constitutional immunity.

The question presented in the *Air-Way* case was whether a state franchise tax imposed on a foreign corporation, based upon its total authorized non-par shares, only a small part of which had been issued, was forbidden. In holding that the tax infringed the equal protection clause, the Court was careful to point out that it was a tax computed upon the number of authorized shares of such a corporation, whether or not subscribed for or issued, and so had no relation to the value of the privilege exercised by the foreign corporation within the state and was

not a reasonable measure of the tax imposed on such a privilege. And in *Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50, in upholding a franchise tax similar to that here involved upon a domestic corporation having non-par shares, whose entire authorized stock had been issued, this Court, in speaking of the decision in the *Air-Way* case, said (p. 54):

"While one factor in the computation of the tax was properly the proportion of the corporation's business done and property owned within the State, the other factor was the amount of its authorized capital stock, only a part of which had actually been issued. The authority to issue, its capital stock was a privilege conferred by another State and bore no relation to any franchise granted to it by the State of Ohio or to its business and property within that State. When authorized capital stock is taken as the basis of the tax, variations in the amount of the tax are obtained, according as the corporation has a large or small amount of unissued capital stock. This was held, in the *Air-Way Case,* to be an unconstitutional discrimination, since it resulted in a tax larger than the tax imposed on other corporations with like privileges and like business and property within the State, but with a smaller capital authorized under the laws of the State of their creation."

But the computation of the present tax is not, as in the *Air-Way* case, based upon the mere authority of the corporation to issue stock, a privilege conferred by another state and not fully exercised. Instead it is calculated on the number of shares of stock actually issued and used by the corporation in carrying on its business within the state. There is no complaint of discrimination between foreign and domestic corporations and no attempt to tax property outside the state, since the tax is apportioned to the property used within it. See *International Shoe Co.* v. *Shartel, post,* p. 429. So we come to different questions from any presented in the *Air-Way* case: Whether issued

capital stock of foreign corporations may be made the basis of a franchise or license tax at a flat rate per share when apportioned to the property and business of the corporation within the state, and whether the taxing act may discriminate by placing in one class corporations having par value stock and in another corporations having stock without par value.

1. It is said that the tax computed on the number of non-par shares at a flat rate may bear little relation to the property and business of the corporation within the state and consequently corporations having like property and business within the state, but with a different non-par capitalization, may be required to pay a different tax. But this is equally true of corporations having par value stock, even though full value be paid in on its issue. Par value and actual value of issued stock are not synonymous and there is often a wide disparity between them. Par value has long been a familiar basis of computing a franchise tax upon foreign corporations, and when otherwise unobjectionable has been repeatedly upheld by this Court. See *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350; *Hump Hairpin Co.* v. *Emmerson*, 258 U. S. 290; *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147.

We have likewise sustained a state franchise tax on foreign corporations, measured by a fixed percentage of its non-par stock valued, as required by the statute, at $25 per share, and apportioned to the property and business of the corporation within the state. *Margay Oil Corporation* v. *Applegate*, 273 U. S. 666; aff'g 167 Ark. 614; *Gilliland Oil Co.* v. *Arkansas*, 274 U. S. 717, aff'g 171 Ark. 415.

The kind and number of shares with which a foreign corporation is permitted to carry on its business within the state is a part of the privilege which the state extends to it and is a proper element to be taken into account in fixing a tax on the privilege. It may be assumed that if the doing of business with a greater number of non-par shares

is not deemed by the taxpayer to be a valuable privilege, it will reduce the number of shares as the statute permits. A state which has adopted a permissible scheme of franchise tax for domestic corporations, based on capital stock, *Roberts & Schaefer Co.* v. *Emmerson, supra,* has a legitimate interest in imposing a like burden on foreign corporations which it permits to carry on business there, and we can perceive no constitutional objection to its protecting that interest by such a tax where, as here, it is limited to shares actually issued, is not assailed as confiscatory, does not reach either directly or indirectly property beyond the state and does not discriminate between foreign and domestic corporations, or between foreign corporations of like organization and property.

There is nothing in the Constitution which requires a state to adopt the best possible system of taxation. *Southwestern Oil Company* v. *Texas,* 217 U. S. 114, 126; *Delaware Railroad Tax Cases,* 18 Wall. 206, 231. Although permissible, a franchise tax need not be based solely on the amount of business done or property owned within the state. It may be rested on the nature of the business. *Southwestern Oil Company* v. *Texas, supra; Quong Wing* v. *Kirkendall,* 223 U. S. 59; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Williams* v. *Fears,* 179 U. S. 270, 275; see *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 562, or the particular form in which it is carried on, see *Home Insurance Co.* v. *New York,* 134 U. S. 594, 606, so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the state. See *Roberts & Schaefer Co.* v. *Emmerson, supra,* at p. 57.

We think that the measurement of such a tax upon a foreign corporation at a flat rate upon its corporate stock, either par or non-par, used within the state, is likewise reasonably related to the privilege granted by the state and to the protection of its own interest in the mainte-

nance of its similar policy of taxation with respect to domestic corporations and so does not infringe any constitutional immunity.

2. Nor is such a tax to be deemed a denial of equal protection because a different measure or method of computing the tax is applied to corporations having non-par stock from that applied to corporations having stock of par value. In *Roberts & Schaefer Co.* v. *Emmerson, supra,* at p. 56, it was pointed out that there were such differences between par and non-par shares, both in their legal incidents and their actual use, and such practical difficulties in measuring a tax by the latter except by assigning to them an artificial or fixed value or assessing them at a flat rate, as to justify the classification for purposes of a franchise tax on domestic corporations. It was accordingly held that such a tax may be based on the par value of shares of corporations having par value stock, and on a fixed value assigned to non-par shares, regardless of their actual value or the varying amounts paid in upon them.

But these differences between the two classes of stock, and especially the difference in the rights of creditors of the two classes or corporations,[1] equally justify classification and discrimination between them in fixing a franchise tax based on corporate stock of foreign corporations. The inequalities in the tax result from a classification founded upon real differences, hence the resulting

---

[1] The use of non-par stock which may be issued at any price deemed wise, at the particular time, by the directors or stockholders, see New York Stock Corporation Law, § 69; Missouri Stock Corporation Law, § 5, or in many cases for property without fixing a price, and which has no fixed or designated amount dedicated to capital or surplus respectively, makes difficult the determination of the true capital of the corporation which it is required to keep intact and the amount which any particular stockholder is bound to pay for his stock. See Berle, Problems of Non-Par Stock, 25 Columbia Law

discrimination is not arbitrary or prohibited by the Fourteenth Amendment.

*Reversed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER concur in the result.

Rev. 43; Ballantine, Corporations (1927) § 217; cf. *Johnson* v. *Louisville Trust Co.*, 293 Fed. 857. Resulting difficulties in the enforcement by creditors of the liability of directors for improper diversion of capital or of stockholders for unpaid subscriptions, have been often urged as arguments against any use of non-par stock. 1 Cook, Corporations (1923) § 45d; Bonbright, Dangers of Shares without Par Value, 24 Columbia Law Rev. 449; Ripley, Railroads-Finance & Organization (1915) 91; Cook, Stock without Par Value, 19 Michigan Law Rev. 583.