NORFOLK AND WESTERN RAILWAY COMPANY,
*A Corporation*

*v.*

JOHN A. FIELD, *Individually and as Tax Commissioner of The State of West Virginia*

(CC 836)

Submitted September 18, 1957. Decided December 3, 1957.

*John P. Fishwick, James E. Carr, Ernest K. James, E. Glenn Robinson,* for plaintiff.

*W. W. Barron,* Attorney General, *Henry C. Bias, Jr.,* Assistant Attorney General, for defendant.

GIVEN, JUDGE:

Plaintiff, Norfolk and Western Railway Company, instituted a proceeding in the Circuit Court of Kanawha County against Joseph S. Soto, Individually and as Tax Commissioner of the State of West Virginia, praying a declaratory judgment as to its rights and obligations arising under Chapter 33 of the 1933 Acts of the Legislature, First Extraordinary Session, as amended, now Article 12A of Chapter 11 of the 1955 Michie Code of West Virginia, relating to the assessment and collection of privilege taxes. Having succeeded the defendant Soto in office, John A. Field, Individually and as Tax Commissioner of the State of West Virginia, was substituted in lieu of the original defendant. A demurrer interposed to the petition was sustained in part, and the questions decided thereby were certified to this Court.

The petitioner alleges, in effect: That it is a public service corporation, organized under the laws of Virginia and authorized to transact business as a common carrier in Virginia, West Virginia, North Carolina, Kentucky, Ohio and Maryland; that its railroad extends through Jefferson, Mercer, McDowell, Mingo and Wayne Counties of West Virginia; that after its railroad enters West Virginia at a point near Glen Lyn, Virginia, it extends over territory of West Virginia for approximately 22.51 miles to a point where it crosses the boundary line between West Virginia and Virginia, then extends for approximately 5.48 miles over territory of Virginia to a point where it again enters West Virginia, then extends over territory of West Virginia to a point near Matewan, where it crosses the boundary line between West Virginia and Kentucky, then extends over territory of Kentucky for a distance of 0.28 of a mile to a point where it again enters West Virginia, and then continues over territory of West Virginia until it crosses the boundary line between West Virginia and Ohio; that its business in West Virginia is " (a) freight and/or passengers originating and terminating and conducted entirely within this state, hereinafter called 'intrastate business'; and (b) freight and/or passengers not

conducted entirely within this state, including freight and/or passengers originating within the State of West Virginia and destined to a point outside of West Virginia, freight and/or passengers originating at a point outside of West Virginia and destined to a point within West Virginia, freight and/or passengers originating and terminating within West Virginia but passing through the adjoining state or states, and freight and/or passengers originating and terminating at points outside of West Virginia but passing through the State of West Virginia, all hereinafter called 'interstate business' "; that its facilities in West Virginia handle both interstate and intrastate business, and that it is "impossible to distinguish or separate the properties and facilities employed in each type of service"; that the tax imposed on petitioner by virtue of the statute mentioned, "since the enactment of the law in 1933, exceeded in amount plaintiff's gross receipts from the exercises of the privilege subject to the tax"; that for the year 1954 the gross revenue of all intrastate traffic was $302,294.00, the net railway operating income from intrastate income before payment of the tax assessed by virtue of Sections 2, 5a and 5b, was $47,155.00 and that the tax assessed by virtue of such sections was $450,473.00; that the tax imposed on plaintiff by virtue of Section 2 of the Act, for each of the years since the enactment thereof, has averaged approximately $443,000.00, and that the entire receipts from its intrastate business, for each of said years, have averaged approximately $284,000.00; that plaintiff has withheld and declined to pay the tax assessed against it by virtue of Sections 2 and 5a for the third quarter of 1954, amounting to $112,618.28, plus a penalty of $1,126.18; and that payments of the taxes previously assessed by virtue of such statutes have been made by plaintiff under protest.

Absent from the petition is any allegation of fact relating to the income of the plaintiff as to its entire business done in West Virginia; as to plaintiff's interstate business done in West Virginia; as to the quantity of its intrastate or interstate business measured in ton-miles;

as to the quantity of loop traffic moved over the 5.48 miles or the 0.28 of a mile; as to whether such loop traffic is merely incidental to plaintiff's intrastate business; or as to the benefits derived by plaintiff from the exercise of the privilege taxed. No complaint is made as to the value placed on the property of plaintiff located in West Virginia, or as to the manner of the computation of the tax assessed for the year 1954, the tax year in question, pursuant to Section 2 of the Act, or that the tax was computed in a manner different from the computation of the tax as to any other taxpayer.

The questions certified are: "1. Must all sections of Article 12A of Chapter 11, Code of West Virginia of 1931, as amended, applicable to railroad corporations and the operation of that Article as a whole upon the entire business of the plaintiff conducted within this state, be considered in determining whether the tax imposed by Section 2 thereof and the surtax thereon constitute a direct and unlawful burden upon the interstate business of the plaintiff? 2. If the tax imposed by Section 2 and the surtax thereon may be considered separately from the other provisions of Article 12A for the purpose of determining whether such tax unlawfully burdens interstate commerce, must the plaintiff's business conducted between points in this state but passing enroute through the State of Virginia for 5.48 miles and/or the State of Kentucky for 0.28 mile, be considered in determining whether such tax constitutes a direct and unlawful burden upon the interstate business of the plaintiff? 3. May the issue of whether the measure of the tax imposed by Section 2 and the surtax thereon denies plaintiff due process of law because it is arbitrary, in that it bears no reasonable relation to the value of the taxed privilege, be determined by the effect of such tax upon the plaintiff's business in this state or must it be determined by the general operation and effect of such tax upon the class of taxpayers to which it applies?"

Article 12A of Chapter 11 of the Michie 1955 Code deals with "Privilege Tax on Certain Carrier Corporations".

Section 1 thereof defines certain words and terms. Section 2 reads: "Every railroad corporation doing business in the State shall pay an annual privilege tax for each calendar year for the privilege of doing business in the State. The tax shall be five-tenths of one per cent of the value of the total property, tangible and intangible, of the corporation in the State as determined by the assessment made during the calendar year by the board of public works for the purposes of the general property tax.

"It is the purpose of this section to levy a privilege tax upon railroad corporations for the privilege of engaging in business conducted entirely within this State, and it is not intended to impose any tax or charge upon interstate or foreign commerce. The return required for purposes of the general property tax shall suffice for purposes of this section.

"No public corporation of the State shall levy a license or privilege tax on the business taxed under this section."

Sections 3 and 4 provide for the assessment of privilege taxes against certain taxpayers other than railroads. Section 5, in so far as pertinent, reads: "In addition to the tax imposed in the preceding sections * * * every railroad corporation * * * doing business in this State shall pay an annual privilege tax for each calendar year for the privilege of doing business in the State, to be determined as follows: * * * (b) The tax as to railroad corporations shall be equal to four per cent of the net income earned within the State, such income to be determined by ascertaining a sum bearing the proportion to total net income of the corporation that its business done in West Virginia, measured in ton-miles, bears to all business done, measured in like fashion * * *".

Section 5a reads: "Every person taxable under sections two, three, four or five of this article shall pay, in addition to that tax and all other taxes, an additional surtax of three-tenths of the tax imposed by such sections." Section 5b provides a credit or deduction in the taxes assessed in this language: "* * * For the period commencing July

one, one thousand nine hundred fifty-five, and thereafter a reduction of five per cent of the total net balance of taxes due is allowed. The normal tax shall be computed by the application of rates against intrastate gross income, pro-rated gross income, assessed value of all property in West Virginia, and by pro-rated net income as set forth in sections two, three, four or five, inclusive, of this article. The surtax shall be computed by the application of the tax rate as set forth in section five- (a) of this article. The total net balance of taxes due shall be reduced by the five per cent credit allowed herein. The total net balance of taxes due reduced by the five per cent credit is the amount of tax payable." Prior to July 1, 1955, the effective date of an amendment to this section, the allowable deduction was ten per cent of the total tax.

Section 5c relates to certain exemptions. Section 6 requires that the taxpayer file an annual return with the State Tax Commissioner, "setting out the following and such other information as that officer may deem necessary or useful in aid of the assessment and computation of the tax: (1) The gross income, from all business done within the State, namely, business beginning and ending entirely within the State; (2) The total gross income of the business wherever conducted; (3) The net income of the business wherever conducted. For this purpose the determination of net income for purposes of the net income tax due the government of the United States under the laws of the United States shall be taken as final; (4) The total amount of business done in this State, measured in the units hereinbefore prescribed. The tax commissioner may designate a single month in the tax year as the period for which the amount of business done in this State, measured in the units hereinbefore prescribed, shall be reported and shall fix the total amount of business done in the State for the whole tax year by multiplying the amount determined for the designated month by twelve. For the tax period from the date this act takes effect through December thirty-first, one thousand nine hundred thirty-three, the tax commissioner may designate any

month in that period for purposes thereof; (5) The total amount of business done, wherever conducted, measured in the units hereinbefore prescribed * * *".

Section 9 reads: "The tax imposed under this article shall be in addition to all license taxes or charges to which the privileges taxed herein are subject under the law of this State. It is the purpose of this article to rest a fair share of the tax burden, commensurate with the benefits received, upon those exercising privileges taxed hereby within this State." Other sections of Article 12A relating to the assessment or collection of privilege taxes are not deemed pertinent to any question to be considered.

It may be noted that the questions certified to this Court for answer are narrowly restricted. As pointed out in the brief of plaintiff, "The validity of Section 5(b) is not questioned in this case. Section 2 only is in issue". Actually, the constitutionality of Section 2 is not brought to this Court by the questions certified, but only questions relating to the nature of the tax imposed and questions relating to whether the methods of assessing such tax contravene constitutional principles.

As to the first certified question, it seems to be the contention of plaintiff that the tax authorized to be assessed under Section 2 is a separate and distinct tax, separate and distinct from the tax imposed on railroad corporations by Section 5, and that such tax necessarily constitutes a direct burden on interstate commerce, since the tax imposed is several times greater in amount than the gross income from its intrastate business, necessitating the payment of the tax from earnings from its interstate business. The position of defendant is that only one tax is imposed by Article 12A and that only one privilege is taxed by that article, that of doing business in West Virginia, and that the one tax is measured in part by the method provided in Section 2, "five-tenths of one per cent of the value of the total property" of the plaintiff in this State, and in part by the method provided in Section 5, paragraph (b), "four per cent of the net income earned within the State, such income to be determined by ascertaining a sum bearing

the proportion to total net income of the corporation that its business done in West Virginia, measured in ton-miles, bears to all business done, measured in like fashion".

The Act of the Legislature, now Article 12A, Chapter 11 of the Code, as amended, was enacted for the purpose of "imposing a privilege tax upon the exercise of certain privileges in the state". As applied to railroad corporations, the tax, by both Section 2 and Section 5, was on the exercise of the privilege of "doing business in this State". Section 6 requires the taxpayer to make an annual return, indicating the information to be furnished the tax commissioner, and authorizes the tax commissioner to use such information "in assessing the tax (not the taxes) imposed by this article". The total tax is computed from such return, supplemented by "such other information" as the tax commissioner may deem necessary or useful. Section 9, in clear language, states: "It is the purpose of this article to rest a fair share of the tax burden, commensurate with the benefits received, upon those exercising privileges taxed hereby within this State." "Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes * * * The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce." *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 65 L. ed. 165, 41 S. Ct. 45.

Our examination of these sections, and the entire act, leads us to the conclusion that the clear intention of the Legislature was to impose a single privilege tax on railroad corporations for the privilege of exercising the right to do business in this State, and that the measure of such tax is determined by the methods indicated in Sections 2 and 5. Only the amount of such tax, not the nature thereof, is affected by the pertinent provisions of the statute relating to credits, deductions and exemptions. It is true, as pointed out by plaintiff, that Section 2 states that the purpose of this section is to levy a privilege tax on railroad

corporations for the privilege of engaging in business conducted "entirely within this State". The sentence from which the words quoted for emphasis are taken, however, contains the further language that "it is not intended to impose any tax or charge upon interstate or foreign commerce". Consideration of the phrases, in their proper setting, we think, makes it clear that the Legislature was simply saying that the privilege tax should not be measured by income earned in some other state. This view is fully warranted by language contained in the sections defining the base amount on which the tax must be measured. "A taxing statute, like others, must be read as a whole, as it stands on the statute books at its applicable date, and the legislative purpose in enacting it must be taken, regardless of forms of words, to envisage the obvious consequences which flow from its operation." *Pacific Co.* v. *Johnson*, 285 U. S. 480, 76 L. ed. 893, 52 S. Ct. 424.

Determination that the tax imposed is one tax, or that only one privilege is taxed, however, does not necessarily control the question whether the method of measuring the tax, or the tax itself, runs counter to the emanating, but politically laudatory, tentacles of the commerce clause of the Federal Constitution. On the face of the statute here controlling there is nothing apparent to indicate that either of the methods of measuring the tax imposed on the taxpayer, doing both an intrastate and interstate business in this State, is in conflict with the commerce clause, or with the controlling decisions of Federal Courts interpreting or applying that clause. See *Spector Motor Service, Inc.* v. *O'Conner*, 340 U. S. 602, 95 L. ed. 573, 71 S. Ct. 508; *Freeman* v. *Hewit*, 329 U. S. 249, 91 L. ed. 265, 67 S. Ct. 274; *McLeod* v. *Dilworth Co.*, 322 U. S. 327, 88 L. ed. 1304, 64 S. Ct. 1023; *McCarroll, Commissioner of Revenues* v. *Dixie Greyhound Lines*, 309 U. S. 176, 84 L. ed. 683, 60 S. Ct. 504; *A. Magnano Co.* v. *Hamilton*, 292 U. S. 40, 78 L. ed. 1109, 54 S. Ct. 599; *Pacific Co.* v. *Johnson*, 285 U. S. 480, 76 L. ed. 893, 52 S. Ct. 424; *People of the State of New York* v. *Latrobe*, 279 U. S. 421, 73 L. ed. 776, 49 S. Ct. 377; *Central*

*Greyhound Lines* v. *Mealey,* 334 U. S. 653, 92 L. ed. 1633, 68 S. Ct. 1260. It is contended by plaintiff that the decision in *Central Greyhound Lines* v. *Mealey, supra,* and like decisions, require that the pertinent statute in the instant case be declared invalid for the reason that the tax thereby authorized imposes a direct burden on the interstate business of plaintiff. The holding in the *Mealey* case, however, was founded on the established fact that the tax was imposed solely on the privilege of the taxpayer to engage in interstate transportation within the taxing state, therefore a direct burden on interstate commerce, a tax not within the power of a state to levy, whatever the method adopted, the granting of the privilege of engaging in interstate commerce being a matter within the exclusive control of Congress. That case is clear authority, however, for the proposition that as to loop traffic, which is over "a necessary deviation or a calculated detour", a state may exact "a constitutionally fair demand" of taxes "for that aspect of the interstate commerce to which the State bears a special relation". Though a state may not tax the privilege itself, and can not arbitrarily or unreasonably burden interstate commerce, a state is not precluded from requiring that interstate commerce, as to business done within the state, should pay its own way. To hold otherwise would be to say that a state, by way of taxation against its own citizens, must contribute, free, to such interstate business its police, health, and other regulatory powers and services. "State taxation falling on interstate commerce * * * can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys." *Freeman* v. *Hewit, supra.* "It being once admitted, as of course it must be, that not every law that affects commerce among the States is a regulation of it in a constitutional sense, nice distinctions are to be expected. Regulation and commerce among the States both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines. As the property of companies engaged in such commerce may be taxed, *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18 * * * it has been held

that a tax on the property and business of a railroad operated within the State might be estimated *prima facie* by gross income, computed by adding to the income derived from business within the State the proportion of interstate business equal to the proportion between the road over which the business was carried within the State to the total length of the road over which it was carried. *Wisconsin & Michigan Ry. Co. v. Powers,* 191 U. S. 379." *Galveston, Harrisburg and San Antonio Railway Co. v. Texas,* 210 U. S. 217, 52 L. ed. 1031, 28 S. Ct. 638.

Of course, "* * * A formula not arbitrary on its face or in its general operation may be unworkable or unfair when applied to a particular railway in particular conditions". *Norfolk and Western Railway Co. v. State of North Carolina,* 297 U. S. 682, 80 L. ed. 977, 56 S. Ct. 625. See *Nashville, Chattanooga & St. Louis Railway v. Walters,* 294 U. S. 405, 79 L. ed. 949, 55 S. Ct., 486. In the instant case, however, we are not told, by allegations of fact in the petition, whether the "formula" followed by the statute as applied to the assessment of the tax against plaintiff is "unworkable or unfair". Certain facts relating only to the intrastate business are alleged. To illustrate, the quantity of the interstate business of the taxpayer, either in income or in ton-miles, done in this State during the time covered by the assessment involved, can not be determined from such allegations, nor the proportion of that business to the entire business of the taxpayer done in West Virginia. The amount of benefits flowing to the plaintiff in return for the exercise of the privilege taxed can not be determined without knowledge of such facts. Obviously, if we do not have sufficient facts to appraise the value of the benefits, we can not determine that the burden imposed outweighs the benefits. It is true that the petition alleges that the amount of the tax assessed under Article 12A is several times greater than the amount of the income from the intrastate business of the taxpayer, but the measure of such a tax does not necessarily rest solely on the amount of income of the taxpayer earned in intrastate or interstate business.

To so hold would be to say, in effect, that the privilege of doing business in West Virginia could be taxed only if the taxpayer operated a profitable business. An applicable rule requires that the tax imposed bear some reasonable relation to the benefits granted the taxpayer, benefits derived from the privilege taxed, not a reasonable relation to the income or profits. The income may, of course, weigh heavily and, in some cases may control the determination of the reasonableness, or arbitrariness of the tax, but essential elements necessary to determine reasonableness can not be ignored. *Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123, 75 L. ed. 879, 51 S. Ct. 385; *Central Greyhound Lines* v. *Mealey, supra; Dane* v. *Jackson*, 256 U. S. 589, 65 L. ed. 1107, 41 S. Ct. 566; *Union Tank Line Co.* v. *Wright*, 249 U. S. 275, 63 L. ed. 602, 39 S. Ct. 276; *St. Louis-San Francisco Railway Co.* v. *Middlekamp, State Treasurer*, 256 U. S. 226, 65 L. ed. 905, 41 S. Ct. 489; *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Backus*, 154 U. S. 421, 38 L. ed. 1031, 14 S. Ct. 1114.

The first question certified was considered and decided by the trial court on the contention of the State, raised by Point 2 (b) of its demurrer, that "The plaintiff has failed to allege any facts from which the operation of Article 12A upon its entire business within this state can be determined". We think there was no error in the ruling of the trial court in sustaining the demurrer to the question so raised.

The second certified question attempts to raise questions as to traffic originating and ending in this State, but moved over the 5.48 miles of the railroad of plaintiff located in Virginia, or the 0.28 of a mile of the railroad of plaintiff located in Kentucky, referred to as loop traffic. Plaintiff contends that all of such traffic constitutes interstate commerce and, therefore, can not be classed as commerce "conducted entirely within this State"; and is not business reached and taxed by Section 2 of Article 12A. Apparently, all of such loop traffic has been classified by plaintiff as business not conducted in West Virginia.

As pointed out above, the effect of Section 2 is to provide a method to determine in part the total tax to be assessed for the privilege of doing business in this State. That method relates only to, the tax is measured by, "the value of the total property" of the taxpayer in this State, not to any quantum of business, intrastate or interstate. Since, however, Section 5 requires that the other part of the total tax be determined from the "net income earned within the State", the question of whether the income from such loop traffic may be classed as income earned within this State may become important in determining whether the tax actually imposes an unfair or unreasonable burden on interstate commerce. The fact that such loop traffic is technically interstate commerce, however, does not necessarily establish that the income derived therefrom does not arise from business conducted within this State.

In *Lehigh Valley Railroad Co.* v. *Pennsylvania,* 145 U. S. 192, 36 L. ed. 672, 12 S. Ct. 806, it is said: "If it has happened that through engineering difficulties, as the interposition of a mountain or a river, the line is deflected so as to cross the boundary and run for the time being in another State than that of its principal location, does such detour in itself impress an external character on internal intercourse? For example, the Nashville, Chattanooga and St. Louis Railway Company is a corporation created under the laws of Tennessee, and through freight and passengers transported from Nashville to Chattanooga pass over a few miles in Alabama and perhaps two miles in Georgia, but we had not supposed that the circumstance would render the taxation of that company, in respect of such business, by the State of Tennessee invalid * * * It should be remembered that the question does not arise as to the power of any other State than the State of the termini, nor as to taxation upon the property of the company situated elsewhere than in Pennsylvania, nor as to the regulation by Pennsylvania of the operations of this or any other company elsewhere, but it is simply whether, in the carriage of freight and passengers between two points

in one State, the mere passage over the soil of another State renders that business foreign, which is domestic. We do not think such a view can be reasonably entertained * * *". See *Central Greyhound Lines* v. *Mealey, supra; People of the State of New York* on the relation of *Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549, 59 L. ed. 355, 35 S. Ct. 162; *Ewing* v. *City of Leavenworth,* 226 U. S. 464, 57 L. ed. 303, 33 S. Ct. 157; *Hanley* v. *Kansas City Southern Railway Co.,* 187 U. S. 617, 47 L. ed. 333, 23 S. Ct. 214; *American Barge Line Co.* v. *Koontz,* 136 W. Va. 747, 68 S. E. 2d 56. In the *Sohmer* case, *supra,* the holding of the Court is well illustrated by language used in a headnote: "Transportation between ports of a State is not interstate commerce to the extent of being excluded from the taxing power of the State because a part of the journey is over the territory of another State; and so *held* as to tows for various points in the State of New York from the harbor of New York and made up for convenience at a point in the Hudson River below Weehawken in New Jersey".

As previously pointed out, we have found nothing unreasonable or unconstitutional in the method provided by Section 2 for the assessment of the tax. The burden, therefore, falls on the taxpayer to establish such facts as may be necessary to show that the statute, as applied to it, is invalid: "* * * when the State has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases". *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 75 L. ed. 879, 51 S. Ct. 385. In *Norfolk and Western Railway Co.* v. *State of North Carolina,* 297 U. S. 682, 80 L. ed. 977, 56 S. Ct. 625, it is said: "A finding that the statute, though fair upon its face, is oppressive toward the railway in its practical operation cannot rest upon so fragmentary and partial a showing of facts. We must bear in mind steadily that the burden is on the taxpayer to make oppression manifest by clear and cogent evidence. Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 121, 41 S. Ct. 45, 65 L. Ed. 165; Maxwell v. Kent-Coffey Mfg.

Co., 204 N. C. 365, 372, 374, 168 S. E. 397, 90 A. L. R. 476; 291 U. S. 642, 54 S. Ct. 437, 78 L. Ed. 1040; Bass, Ratcliff & Gretton, Ltd., v. State Tax Commission, 266 U. S. 271, 280, 283, 45 S. Ct. 82, 69 L. Ed. 282 * * *". See *Turpin* v. *Lemon,* 187 U. S. 51, 47 L. ed. 70, 23 S. Ct. 20; *Waller* v. *Commonwealth,* 178 Va. 294, 16 S. E. 2d 808, Cert. denied, 316 U. S. 678, 86 L. ed. 1752, 62 S. Ct. 1106, rehearing denied, 316 U. S. 712, 86 L. ed. 1777, 62 S. Ct. 1289.

A taxing statute though within the lawful power of a state may not "* * * be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or business *(Loan Association* v. *Topeka,* 20 Wall. 655, 663-664; *McCray* v. *United States, supra,* 56-58, and authorities cited; *Alaska Fish Co.* v. *Smith,* 255 U. S. 44, 48-49; *Child Labor Tax Case, supra,* 38, 40-43), unless, indeed, as already indicated, its necessary interpretation and effect be such as plainly to demonstrate that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal Constitution to the state * * *". *A. Magnano* v. *Hamilton,* 292 U. S. 40, 78 L. ed. 1109, 54 S. Ct. 599. See *Fox* v. *Standard Oil Company of New Jersey,* 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333.

Examination of the allegations of the petition, detailed above, reveals that no facts are alleged from which determination can be made as to whether the tax imposed on plaintiff may constitute an unreasonable or unfair burden on interstate commerce, whether such tax is arbitrarily imposed, or whether the so called loop traffic may be "so trifling in quantity * * * as to be constitutionally insignificant". *Central Greyhound Lines* v. *Mealey, supra.* See *Freeman* v. *Hewit,* 329 U. S. 249, 91 L. ed. 265, 67 S. Ct. 274; *Lone Star Gas Co.* v. *Texas,* 304 U. S. 224, 82 L. ed. 1304, 58 S. Ct. 883. We reach the conclusion, therefore, that the action of the trial court in sustaining the demurrer to the petition, as such demurrer relates to the second certified question, was correct.

The third certified question is, perhaps, more narrowly restricted than the other questions certified. It relates, principally, at least, to a determination of whether the measure of that part of the tax imposed by the method provided by Section 2 denies to the taxpayer due process. In the language of plaintiff, "The question certified is whether the issue of due process can be determined by the effect of the tax on plaintiff's business in this state or whether it must be determined by the general operation and effect of the tax on all taxpayers of the same class". As pointed out above, plaintiff does not, in this proceeding, question the validity of the measure of that part of the privilege tax imposed by Section 5. The requirement of Section 2, on which plaintiff bases its contention of denial of due process, is that the measure of the tax "be five-tenths of one per cent of the value of the total property, tangible and intangible, of the corporation in the State as determined by the assessment made during the calendar year by the board of public works for the purpose of the general property tax". There is no question here as to the value of such property. That value is arrived at, principally at least, from the return made by the taxpayer to the Board of Public Works. Neither does there appear to be any contention to the effect that the Legislature does not have the power to measure the tax, if reasonably apportioned, on such a basis, or that the rate of that part of the tax imposed by Section 2 is, of necessity, unreasonable or arbitrary. Clearly, the statute is designed and intended to apply fairly to all taxpayers reached by it. There appears nothing arbitrary or unreasonable in measuring the tax in part by the value of the property of plaintiff actually located in West Virginia which, of necessity, runs counter to the due process provisions of the State or Federal Constitutions. See *Fox* v. *Standard Oil Company of New Jersey,* 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333; *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 75 L. ed. 879, 51 S. Ct. 385; *People of the State of New York* v. *Latrobe,* 279 U. S. 421, 73 L. ed. 776, 49 S. Ct. 377; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 65 L. ed. 165,

41 S. Ct. 45; *Union Tank Line Co.* v. *Wright*, 249 U. S. 275, 63 L. ed. 602, 39 S. Ct. 276. The quantity of property of plaintiff located in West Virginia, including the number of miles of railroad track, as well as the earnings from business conducted therein, have a direct relation to the state and governmental services made necessary thereby and, therefore, to a reasonable extent, in the average case at least, tend to reflect the benefits flowing to the plaintiff in the conduct of its business in West Virginia. The use of the two methods or bases for the total tax, so the Legislature apparently intended, equalizes proportionately the tax burden as to individual taxpayers in the same class, those having large amounts of property within the State but small income from business transacted therein, and those having greater income from such business but less property therein. See *McCarroll, Commissioner of Revenues* v. *Dixie Greyhound Lines,* 309 U. S. 176, 84 L. ed. 683, 60 S. Ct. 504; *Fox* v. *Standard Oil Company of New Jersey,* 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333; *Air-Way Electric Appliance Corporation* v. *Day,* 266 U. S. 71, 69 L. ed. 169, 45 S. Ct. 12; *Dane* v. *Jackson,* 256 U. S. 589, 65 L. ed. 1107, 41 S. Ct. 566; *Union Tank Line Co.* v. *Wright,* 249 U. S. 275, 63 L. ed. 602, 39 S. Ct. 276; *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 56 L. ed. 459, 32 S. Ct. 211; *Galveston, Harrisburg and San Antonio Railway Co.* v. *Texas,* 210 U. S. 217, 52 L. ed., 1031, 28 S. Ct. 638; *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Backus,* 154 U. S. 421, 38 L. ed. 1031, 14 S. Ct. 1114.

The holding that due process is not denied plaintiff by methods provided for the determination, assessment or collection of the tax imposed, however, does not preclude the possibility that denial of due process may otherwise result to plaintiff. "A statute valid as to one set of facts may be invalid as to another. A statute valid when enacted may become invalid by change in the conditions to which it is applied". *Nashville, Chattanooga & St. Louis Railway* v. *Walters,* 294 U. S. 405, 79 L. ed. 949, 55 S. Ct. 486. See *Norfolk and Western Railway Co.* v. *State of North Carolina,* 297 U. S. 682, 80 L. ed.

977, 56 S. Ct. 625; *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 66 L. ed. 239, 42 S. Ct. 106. "3. Statutes relating to the classification and licensing of motor vehicles may be valid in their general scope and outline, but invalid and unconstitutional when applied so as to make a privately owned and privately used motor vehicle a public carrier by legislative fiat, contrary to the facts." *State ex rel. Schroath* v. *Condry, Commissioner,* 139 W. Va. 827, 83 S. E. 2d 470. See *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747; *Harbert* v. *County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177.

While circumstances may exist requiring a declaration of validity of a statute "as to one set of facts" but invalidity as to another set of facts, it must not be overlooked that "Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. *Brushaber* v. *Union Pac. R. Co.,* 240 U. S. 1, 24. And no reason exists for applying a different rule against a state in the case of the Fourteenth Amendment. *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 329; *Heiner* v. *Donnan,* 285 U. S. 312, 326. That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. Compare *McCulloch* v. *Maryland,* 4 Wheat. 316, 423; *Child Labor Tax Case,* 259 U. S. 20, 37 et seq; *McCray* v. *United States,* 195 U. S. 27, 60; *Brushaber* v. *Union Pac. R. Co., supra,* 24-25; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 614-615; *Nichols* v. *Collidge,* 274 U. S. 531, 542 * * *". *A. Magnano Co.* v. *Hamilton,* 292 U. S. 40, 78 L. ed. 1109, 54 S. Ct. 599. See *Bode* v. *Barrett,* 344 U. S. 583, 97 L. ed. 567, 73 S. Ct. 468.

In the instant case, the pleadings indicate no facts which necessitate a holding of invalidity of the statute involved.

Nothing is alleged to establish that plaintiff has been denied any constitutional right or has been treated unfairly, or that interstate commerce is being directly or substantially burdened. The rulings of the Circuit Court of Kanawha County therefore must be affirmed.

*Rulings affirmed.*