The SMOOT SAND AND GRAVEL CORPORATION, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Nos. 14290–14294.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 25, 1958.

Decided Nov. 26, 1958.

Petition for Rehearing In Banc Denied Dec. 19, 1958.

---

Mr. David R. Shelton, Washington, D. C., for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, and Milton D. Korman, Principal Asst. Corp. Counsel, were on the brief, for respondent.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The Smoot Sand and Gravel Corporation petitions for review of decisions of the District of Columbia Tax Court determining that deficiencies in franchise taxes assessed against the petitioner and paid to the District for the years 1948 to 1954, inclusive, were correctly assessed. The appeal questions the validity of regulations promulgated by the Commissioners to govern the apportionment to the District for franchise tax

purposes of a part of the net income of petitioner's business, which was carried on partly within and partly without the District. The controlling statute is the District of Columbia Income and Franchise Tax Act, D.C.Code §§ 47–1571, 47–1571a, 47–1580, and 47–1580a (1951).

The petitioner is a Delaware corporation having its principal office in the District of Columbia. It removes, washes, and grades sand and gravel along the shores of the Potomac River and its tributaries in Maryland and Virginia and transports the processed material in scows by tugboat to three "plants" in the District of Columbia where the products are stored and sold. During the taxable years in question approximately 95% of the sand and gravel was disposed of in the District of Columbia through sales effected at the three District plants, and the remaining 5% was sold in Alexandria, Virginia. The Assessor for the District assessed and collected taxes on approximately 95% of petitioner's net income for each of the taxable years pursuant to regulations issued by the Commissioners requiring, in the case of a business consisting of the manufacture and sale of tangible personal property carried on partly within and partly without the District, that the portion of the net income to be apportioned to the District for franchise tax purposes shall be the percentage that sales made in the District during the taxable year bear to total sales everywhere during that year.[1]

---

1. The pertinent parts of the Regulations Pertaining to Income & Franchise Taxes, promulgated on August 31, 1948, read:

"Sec. 10–2. The measure of the franchise tax shall be that portion of the net income of a corporation or unincorporated business as is fairly attributable to any trade or business carried on or engaged in within the District, as defined in the Act, and such other net income as is derived from sources within the District. The portion of such net income which is 'fairly attributable' to any trade or business or such other net income as is derived from sources within the District shall be determined by allocation and apportionment there-

of as prescribed in Sections 10–2(b), 10–2(c), 10–2(d), 10–2(e).

\* \* \* \* \*

"Sec. 10–2(b). \* \* \* If the gross income is derived from engaging in a trade or business partly within and partly without the District or from sources both within and without the District, such gross income shall be allocated and apportioned in accordance with the specific provisions or formulae prescribed in these regulations.

\* \* \* \* \*

"Sec. 10–2(d). Income from Trade or Business. If the trade or business is carried on entirely within the District, the entire gross income from trade or

The Tax Court affirmed the assessments, taking the view that this court had upheld the validity of this regulation in Lever Bros. Co. v. District of Columbia, 1953, 92 U.S.App.D.C. 147, 153, 204 F.2d 39, 45, and District of Columbia v. Radio Corporation of America, supra, note 1. See also Eastman Kodak Co. v. District of Columbia, 1942, 76 U.S.App. D.C. 339, 131 F.2d 347, and Panitz v. District of Columbia, 1941, 74 App.D.C. 284, 122 F.2d 61.

The petitioner apparently agrees that it "manufactures" and sells sand and gravel and that it falls within the reach of the regulation.[2] Its contentions here are that, under the language of the governing statute, its net income must be apportioned by a formula which takes into account its property values and operating costs, as well as sales; that the regulation is invalid because it directs the apportionment of net income by considering only sales; and that this issue was not raised or decided in the Lever Bros. and RCA cases.

We agree that in Lever Bros. and RCA we were not called on specifically to decide whether the District statute required the Commissioners' regulations to provide for apportionment of net income on the basis of sales, property values, and operating costs, instead of exclusively on sales within the District. But we stated in Lever Bros.:

"Certainly the due process clause does not require apportionment of part of the gross receipts from sales to the jurisdiction of manufacture. [Citing cases] We conclude, therefore, that the regulation prescribed by the Commissioners for the year 1948 and applied by the Assessor was valid under the Act * * *." 92 U.S.App.D.C. at page 153, 204 F.2d at page 45.

And in the Panitz and Eastman Kodak cases we ruled, under earlier tax statutes, that an apportionment formula based solely on sales may validly be applied to multi-state business enterprises, even though production of the article sold occurred outside the District. Nevertheless, we will consider here the precise contentions petitioner makes.

The statute involved in this case imposes, for the privilege of carrying on or engaging in any trade or business within the District, a franchise tax at the rate of 5% upon the net income of every corporation which is derived from sources within the District. D.C.Code §§ 47-1571, 47-1571a, and 47-1580

---

business shall be allocated to the District. If the trade or business is carried on partly within and partly without the District, that portion of the gross income from trade or business to be apportioned to the District shall be determined as follows:

"(1) Income from sales of tangible personal property.

"a. Where gross income for any taxable year is derived from the manufacture and sale or purchase and sale of tangible personal property, the portion thereof to be apportioned to the District shall be such percentage of the total of such gross income as the District sales made during such taxable year bear to the total sales made everywhere during such taxable year."

These regulations were stated in Section 17 to be effective from January 1, 1948. In any event, the regulations of November 27, 1947, would, as the Tax Court recognized, have had the same effect. The regulations issued on March 17,

1953, and August 6, 1953, were substantially the same insofar as concerns the apportionment formula: cf., as to the definition of "District sales," District of Columbia v. Radio Corporation of America, 98 U.S.App.D.C. 119, 232 F.2d 376, certiorari denied, 1956, 352 U.S. 845, 77 S.Ct. 44, 1 L.Ed.2d 51. We have no occasion in this opinion to consider other parts of the August 6, 1953, regulations.

Although Sections 10-2(b) and 10-2 (d), as quoted above, refer to "gross income" we do not construe this as a direction for apportionment of "gross" income in view of the provisions of Section 10-2 which limit the apportionment to net income. The word "gross" was eliminated in the edition of the regulations promulgated on August 6, 1953.

2. In this case then we are not concerned with the rule prescribed or followed for other corporations which do not manufacture and sell tangible personal property.

(1951). Section 47–1580 provides that the measure of the tax "shall be that portion of the net income of the corporation * * * as is fairly attributable to any trade or business carried on or engaged in within the District." In addition, Section 47–1580a of the Code provides:

"If the trade or business of any corporation * * * is carried on or engaged in both within and without the District, the net income derived therefrom shall, for the purposes of this article, be deemed to be income from sources within and without the District. Where the net income of a corporation * * * is derived from sources both within and without the District, the portion thereof subject to tax under this article shall be determined under regulation or regulations prescribed by the Commissioners."

It will immediately be noted that the statute does not direct the Commissioners to give weight to any particular factors in prescribing a formula to determine the portion of net income which is fairly attributable to the business carried on within the District. Thus the regulation in issue, which relies on sales as the determinative factor, does not violate a specific statutory provision as to the factors to be taken into account. Nor does the regulation violate the statutory direction that where a business is carried on both within and without the District, the net income therefrom shall be deemed to be income from sources within and without the District. The regulation in terms prescribes a formula for apportionment of income in the situation where sales are in fact made outside the District as well as within it, and we read it as being so limited in application. The regulation thus will inevitably apportion or divide the net income, on the basis of sales, between the District and other taxing jurisdictions where sales are made.

■ Nor is there any basis for reading into the statute an implied prohibition against use of the sales factor alone in making apportionment. The present statute was enacted in 1947. This was some years after this court had upheld— in Eastman Kodak and Panitz—the use of the formula here in question under earlier statutes. Although for the first time the present statute used the words "fairly attributable," and included the provision that the net income of a multi-state business shall be deemed to be income from sources within and without the District, Congress delegated to the Commissioners the task of making the rules to determine the part of the net income which is to be considered to be derived from sources within the District —and it did this in the light of the established regulation. If Congress had thought that the part of the net income which was fairly attributable to the District in the case of a manufacturing and selling business could not properly be determined by an apportionment formula which took into account the sole factor of sales in the District as compared with total sales, it could easily have so stated. In the circumstances its failure to do so is significant, not only eliminating any basis to infer disapproval of the rule, but giving some basis to infer approval.

■ Petitioner urges that the inclusion of these new provisions in the present statute was brought about by certain Supreme Court decisions and that Congress necessarily intended to require the use of a three-factor apportionment formula based on sales, manufacturing costs, and property values. Of the five cases relied on by petitioner, three— Underwood Typewriter Co. v. Chamberlain, 1920, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission, 1924, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282; National Leather Co. v. Massachusetts, 1928, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935—sustained use of a one-factor formula under the proof adduced. One —Hans Rees' Sons v. North Carolina, 1931, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879—held, under the proof, that

the statutory one-factor formula involved, based on property values rather than sales, achieved an arbitrary and unreasonable result in respect of the taxpayer before it. The fifth case—Butler Bros. v. McColgan, 1942, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991—involved a three-factor formula, but not a formula identical with the formula contended for by petitioner here. We find nothing in these decisions to support an inference that in the District statute Congress intended to direct the use of any particular formula, much less the particular three-factor formula urged by the petitioner.

■■ A somewhat comparable provision of the Federal income tax law provides little assistance here. Section 119(e) of the Internal Revenue Code of 1939, 53 Stat. 55, 26 U.S.C. § 119(e),[3] provides, for Federal income tax purposes, that income

"(2) from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States, or produced (in whole or in part) by the taxpayer without and sold within the United States, shall be treated as derived partly from sources within and partly from sources without the United States."

And that

"the portion of such net income attributable to sources within the United States may be determined by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary."

The District statute undeniably has some similarities, but its enactment in 1947 does not require the conclusion that the District Commissioners were to be bound by the regulations issued under the Federal statute.[4] This is confirmed by the omission in the present District statute of the previous provision that the Assessor "shall apply as far as practicable the administrative and judicial interpretations of the Federal income tax law."[5] The failure to reenact this provision, or one similar to it, indicates quite clearly that Congress did not intend to direct that the Commissioners base their regulations on those promulgated under the Federal statute, particularly in view of the existing District regulations which were not repudiated. Moreover, the District statute levies a franchise tax for the privilege of doing business in the District, and the criteria which are to be taken into account for the taxing of such a privilege are not necessarily the same as, or even similar to, those for a Federal tax on income.

■ There being no statutory bar to the apportionment formula adopted in the regulation, the questions remain whether the regulation is inherently arbitrary and unreasonable; or, if not inherently unreasonable, whether the petitioner has shown that, as applied to it, the regulation unreasonably apportions to the District income which properly has no relation to the privilege of doing business here.

On the first question Eastman Kodak and Panitz would seem to supply the answer. Apportionment of income by using a one-factor formula was upheld as against constitutional attacks in the Underwood Typewriter, Bass, Ratcliff & Gretton, Ltd., and National Leather cases, supra. "And the gross receipts formula has been in operation too long and upheld in the courts too frequently to be attacked as unfair or unreasonable *per se* or in the abstract."[6] See Ford

---

3. See also Int.Rev.Code of 1954, § 863(b), 26 U.S.C. § 863(b).

4. In any event, the Federal regulations would not support use of the formula urged by petitioner here. See Section 29.119–12 par. A Case 2A of Treas.Regs. 111, and Section 39.119(e)–1(b) Case A2 of Treas.Regs. 118, promulgated under the Internal Revenue Code of 1939.

5. See D.C.Code § 47–1529(a) (Supp. VI, 1957).

6. Quoted from Household Finance Corp. v. State Tax Commission, 1957, 212 Md. 80, 93, 128 A.2d 640, 646.

Motor Co. v. Beauchamp, 1939, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304; International Harvester Co. v. Evatt, 1947, 329 U.S. 416, 420–421, 67 S.Ct. 444, 91 L.Ed. 390; Norfolk & Western Ry. Co. v. North Carolina, 1936, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977; State of Maine v. Grand Trunk Ry. Co., 1891, 142 U.S. 217, 228, 12 S.Ct. 121, 35 L.Ed. 994. The Ford Motor case is particularly apropos. If a legislature can base apportionment of the subject taxed on the single factor of gross receipts from sales, it must follow that the Commissioners in the exercise of their delegated rule-making power may also do so, if the statute, as here, does not forbid it, and if no other compelling consideration prevents it.[7]

There is no basis for the view that the sales formula adopted here bears no "real and reasonable relation to the privilege granted." People of State of New York v. Latrobe, 1929, 279 U.S. 421, 427, 49 S.Ct. 377, 73 L.Ed. 776. Not only was such a view rejected in the Ford Motor case, but it seems obvious that sales made in the District bear a reasonable relation to the privilege of doing business here. The receipts from such sales were in fact derived from District sources and they represented a material attribute of the business carried on here. Although the product sold in the District was "manufactured" to a large extent outside the District, it is not inherently arbitrary or unreasonable to tax the privilege of carrying on business [8] in its setting as a part of the activities and perquisites of a larger

organization having out-of-state business transactions as well. See International Harvester Co. v. Evatt, supra, 329 U.S. at page 423, 67 S.Ct. 444; Ford Motor Co. v. Beauchamp, supra, 308 U.S. at pages 336–337, 60 S.Ct. 273; Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission, supra, 266 U.S. at page 282, 45 S.Ct. 82.

The petitioner failed to show that the apportionment formula produces an arbitrary and unreasonable result as applied to it. Although it urges that the part of its net income which is fairly attributable to business done in the District must be measured by a three-factor formula, consisting of manufacturing costs incurred, and business property located, in the District as well as sales made here, it offered no evidence which would compel the use of these two additional factors. The manufacturing costs were deducted in their entirety in arriving at the net income which was allocated. Certainly reason does not require that they again be considered as a factor in the allocation, in the absence of evidence showing a necessity for it. The value and situs of the corporation's property used in its operation could doubtless have been ruled to be a permissible factor in apportioning income (cf. Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282; National Leather Co. v. Massachusetts, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935), but to say that this would be permissible does not demonstrate that it must be considered

7. It may be noted that in the Ford Motor case the statute apparently did not use the expression "fairly attributable," as does the statute now before us. Nor, so far as appears, did the statutes involved in Underwood Typewriter, Bass, Ratcliff & Gretton, Ltd., and National Leather Co. contain such language. But in all of these cases the Supreme Court determined that the statutory one-factor apportionment formula, under the proof presented, did not arbitrarily, unreasonably, or unjustly attribute to the state profits earned elsewhere. Butler Bros.

v. McColgan, 1942, 315 U.S. 501, 62 S. Ct. 701, construed the statutory phrase "reasonably attributable" in this light on the authority of some of these cases. We think the term "fairly attributable" in the District statute is to be contrued in the same way.

8. Petitioner not only sold its product here, but its principal office was in the District, where its fiscal and accounting affairs were handled and the general management of all its affairs was conducted.

an indispensable factor. In short, the evidence fails to demonstrate clearly and cogently that the use of either or both factors would produce a more accurate apportionment,[9] or that any specified percentage of the net income was alone attributable to either factor. Cf. Norfolk & Western Ry. Co. v. North Carolina, 1936, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977. Significantly there was also no proof tending to show what part of the net income was actually earned or produced by the business activities carried on in the District. We thus are given no basis to conclude that the formula used to apportion net income resulted in attributing to petitioner's privilege of doing business in the District a greater value than it actually had. This case is far different from Hans Rees' Sons v. North Carolina, 1931, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879, where the proof showed that the income was derived from three sources, of which only two—the manufacturing and tanning operations which produced no more than 17% of the income—were carried on in North Carolina.

Not only is there no express showing that the District has allocated to itself tax values beyond its jurisdiction, but the view that it has done so seems greatly weakened by the fact that the petitioner has never been required to pay any income or franchise taxes to the states of Maryland or Virginia.[10] Cf. American Bemberg Corp. v. Carson, 1949, 188 Tenn. 263, 276–277, 219 S.W. 2d 169, 174. Thus, we are not here presented with a situation where the District is in competition with other taxing jurisdictions for an apportionment of petitioner's net income.

■ The regulations authorize the Assessor to give relief to a taxpayer if the apportionment formula prescribed results in an "inequitable" tax in any specific instance. Section 10–2(d)(1) c(4) of the regulations of August 31, 1948;[11] Section 10–2(d)(4) of the regulations of August 6, 1953.[12] There is a reference in the record to a protest filed by the petitioner on March 13, 1952, but the protest was not offered in evidence. We are not informed as to its contents and cannot assume that the petitioner sought the administrative relief authorized by the regulations. In view of petitioner's failure to show that it has exhausted the administrative remedy, and of our holding upon the contentions advanced by it, petitioner cannot now ask this court to hold that the assessments were invalid and erroneous. Gorham Manufacturing Co. v. State Tax Commission, 1924, 266 U.S.

9. We recognize of course that some, perhaps most, states take one or both such factors, or even other factors, into account in apportioning income for tax purposes. But we are concerned here only with the apportionment formula provided for the District, and the Commissioners were of course not required to adopt what some might deem to be "the best possible system of taxation." People of State of New York v. Latrobe, 279 U.S. at page 427, 49 S.Ct. at page 379.

10. It pays only personal and real property taxes to these states.

11. This section reads as follows: "If it shall appear to any taxpayer that the formulae herein prescribed are inapplicable to its business or will operate so as to apportion to the District a greater portion of the net taxable income of such taxpayer than is fairly attributable to the District, such taxpayer may file with the Assessor a statement of its objection to the use of such formulae together with a proposed alternative method of apportionment. * * * * * "If, however, the Assessor shall conclude that the use of any of the formulae or methods herein referred to would result in an inequitable tax in any specific instance, he shall determine the gross income from within the District by such other methods as, in his opinion, is equitable. * * *"

12. The provision in the regulation of August 6, 1953, is set out in Thomas Paper Stock Co. v. District of Columbia, 1958, 103 U.S.App.D.C. 102, 255 F.2d 180, 181.

265, 45 S.Ct. 80, 69 L.Ed. 279; cf. Thomas Paper Stock Co. v. District of Columbia, 1958, 103 U.S.App.D.C. 102, 255 F.2d 180.

Affirmed.